**FILED**

JUN 2 0 2019

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : Criminal No. *19-196 (ABJ)* |
| v. | : 26 U.S.C. §§ 2615(b), 2689 – Toxic |
| | :  Substances Control Act |
| MOHAMMAD SIKDER and | : 18 U.S.C. § 1001 – False Statement |
| DISTRICT PROPERTIES, LLC, | : |
| Defendants. | : |

## STATEMENT OF THE OFFENSE

Pursuant to Fed. R. Cr. P. 11, defendants MOHAMMAD SIKDER ("SIKDER") and DISTRICT PROPERTIES, LLC, agree and stipulate as follows:

Lead is a toxic substance that can cause permanent developmental and health damage if ingested. The most common source of childhood lead poisoning is lead-based paint in older homes, and the primary exposure pathway is ingestion of lead-contaminated dust.

### The Toxic Substances Control Act

The Toxic Substances Control Act ("TSCA"), 15 U.S.C. §§ 2601-2695, regulates the handling of lead-based paint in the course of renovation projects. It includes several components.

A. Renovation, Repair, and Painting

The Lead-Based Paint Renovation, Repair, and Painting Rule ("RRP Rule"), 40 C.F.R. Part 745, Subpart E, implements TSCA by imposing specific requirements on contractors involved in projects that could disturb lead-based paint. The RRP Rule requires such contractors to be certified and to follow specific work practices to prevent lead contamination when engaged in renovation, repair, and painting projects that disturb lead-based paint in homes, child care facilities, and schools built before 1978. The RRP Rule applies to renovation activity that would

1

likely disturb more than 6 square feet of interior painted surfaces per room, or 20 square feet of the exterior painted surfaces, or involves window replacement. The specific work practices required by the RRP Rule are set forth in 40 C.F.R. § 745.85 and include:

   a. posting warning signs;

   b. containing the work area to prevent the release of dust or debris;

   c. containing waste during and after renovation activities; and

   d. cleaning the work area after the renovation is complete until no dust, debris or residue is still present on surfaces in and below the work area, including windowsills and the ground.

Failure to follow RRP Rule requirements is a violation of TSCA, 15 U.S.C. § 2689.

EPA enforces the RRP Rule by, among other things, conducting civil inspections. As part of the enforcement process, EPA inspectors review local building permit applications to determine the applicability of the RRP Rule to the project at issue, specifically with respect to whether the building was constructed before or after 1978.

   B.   <u>Lead Disclosure Requirements</u>

Pursuant to their joint authority under the Lead Hazard Reduction Act (42 U.S.C. § 4852d), EPA and the United States Department of Housing and Urban Development ("HUD") promulgated the Real Estate Notification and Disclosure Rule ("Disclosure Rule"), found at 40 C.F.R. § 745.107. Under the Disclosure Rule, a seller or lessor of housing constructed prior to 1978 must:

   a. provide the prospective purchaser or lessee with an EPA-approved lead hazard information pamphlet;

    b. disclose to the purchaser or lessee the presence of any known lead-based paint and/or lead-based paint hazards in the housing being sold, along with any additional information on these conditions;

    c. provide the purchaser or lessee with any records or reports available pertaining to lead-based paint ("LBP") and/or LBP hazards; and

    d. disclose to each agent the presence of any known LBP or LBP hazards, the existence of any available records or reports pertaining to LBP and/or LBP hazards, and any additional information available about these conditions.

Additionally, 40 C.F.R. § 745.113 requires that each contract to sell or lease pre-1978 housing include an attachment containing specified information and statements regarding the presence of lead-based paint and/or lead-based paint hazards. Pursuant to 42 U.S.C. § 4852d(b)(5), any violation of the Disclosure Rule constitutes a violation of TSCA, 15 U.S.C. § 2689.

## Stipulated Facts of the Case

A. <u>RRP Rule Violations at Garfield St. Property</u>

On or about May 30, 2014, one of SIKDER's companies, Rupsha, 2013 Inc. ("Rupsha"), purchased the property of 4323 Garfield St. NW, Washington, D.C., for $1.3 million. The purchase agreement between Rupsha and the seller stated that the seller was not aware of lead-based paint hazards but "[w]hile lead-based paint is not known by me to be present in the dwelling unit, it is presumed to be there, because the dwelling unit was constructed prior to 1978."

*MS*
*6/20/19*

On or about July 14, 2014, the D.C. Department of Consumer and Regulatory Affairs (DCRA) issued Mr. Sikder a limited scope permit, known as a "post-card permit" or "walk-through permit," allowing for minor home renovations. The description of work in the permit included "interior demolition of non-bearing elements in a space up to 5,000 square feet (464.5 square meters)."

On October 14, 2014, DISTRICT PROPERTIES, LLC, submitted a building permit application to DCRA for addition, alteration, and repair of the property. At SIKDER's instruction, the employee submitting the permit application, under the section of the application titled "Lead Abatement," falsely indicated that the property was built after 1978. DCRA did not issue the building permit until June 11, 2015.

Between the dates of July 14, 2014, and November 21, 2014, at SIKDER's direction, DISTRICT PROPERTIES, LLC, hired a contractor—certified as a risk assessor in the District of Columbia, but not RRP Rule certified by EPA—to complete demolition work at the Garfield property. The demolition work included removing windows, removing interior and exterior painted surfaces, and removing floor and ceiling joists, without following RRP Rule requirements. On November 21, 2014, after a DCRA inspection at the site, DCRA issued a stop-work order for exceeding the scope of the postcard permit.

A September 24, 2015, an Occupational Safety and Health Administration inspection revealed multiple hazards, including (1) employees performing manual demolition on a wall surface that had paint containing lead; (2) the lack of an employee exposure assessment to determine actual employee exposure; (3) the lack of lead training to employees; and (4) proper

4

*MS 6/20/19*

sanitation practices not being followed. Sampling analysis showed lead present on the dump truck and employees' hands.

B. <u>TSCA Disclosure Violations at Garfield St. Property</u>

On or about July 8, 2015, following demolition of the interior of the property, DISTRICT PROPERTIES, LLC, hired a contractor ("the contractor") to perform a LBP inspection at the property due to multiple third-party complaints to D.C.'s Department of Energy and Environment ("DOEE") and DCRA. The contractor performed LBP testing on the exterior of the property. The contractor's report stated that "lead-based paints were not found on the test paint surfaces analyzed," and that "lead-paint hazards do not exist in this property." But test results attached to the report showed that LBP *was* present on the exterior of the property.

On or about September 2, 2016, in response to DOEE's inquiry about the inconsistency in the contractor's report, the contractor sent a revised report to DOEE, SIKDER, and other DISTRICT PROPERTIES, LLC, staff, acknowledging his mistake. His revised report stated that LBP was found at several places on the property, including the side porch fascia, brick walls, and exterior door and window trims. The report stated that "lead-paint hazards do exist in the property," that "[a]ll lead-based paint components will have to be made intact, or remediated in order to be safe," and that "the positive components have to be remediated, before renovation activities can continue on this property." Finally, the report stated: "Federal law requires that this property's owner provide a copy of this lead-paint inspection report . . . to future tenants or purchasers of this property before they become obligated under a lease or sales contract."

5

The Garfield property was listed for sale on June 8, 2016, for $2,987,000. After the listing, DISTRICT PROPERTIES, LLC, hired a different environmental risk assessor to complete a new LBP inspection conducted on August 31, 2016. This report stated that LBP dust levels were within permissible federal limits, and that the property had "passed" the inspection. This new inspection, unlike the previous inspection performed by the contractor on July 8, 2015, contained samples mostly from the inside of the residence. This inspection occurred after demolition and renovation were complete and the home was listed for sale.

On August 31, 2016, in response to a neighboring citizen's e-mail request that DISTRICT PROPERTIES, LLC, make all appropriate lead paint disclosures in the course of selling the property, SIKDER replied, "We just got the report of not having a single lead-based paint in this house. The house is totally free of lead-based paint. The report was made by D.C. authorized inspector. We will send you the report and you can disclose it to the prospective buyer. Thanks."

DISTRICT PROPERTIES, LLC, sold the property in July 2017. SIKDER submitted and electronically signed a number of disclosure forms, including lead disclosure forms, to a real estate broker, for the listing of the property. In the LBP disclosure forms, he stated that he had no knowledge of LBP or LBP hazards in the house and added in the comments that the inspection report showed the absence of lead in the house. He further stated he would provide the buyer with all reports pertaining to LBP and LBP hazards, including the second contractor's post-renovation LBP inspection report finding no lead present and noting on the form that the contractor found no LBP or LBP hazards. SIKDER did not provide the first contractor's revised inspection report documenting LBP at the property, and the purchaser never received that report.

6

C. <u>Other False Statements Impacting Lead Regulation</u>

Between 2011 and 2017, DISTRICT PROPERTIES, LLC, submitted 25 renovation permit applications for properties in Washington, D.C., including the Garfield property, on which the company falsely represented that the properties had been built after 1978, thereby circumventing additional permitting requirements and avoiding EPA oversight with respect to RRP Rule compliance, which would be triggered by an accurate permit application.

Respectfully submitted,

JEAN E. WILLIAMS
DEPUTY ASSISTANT ATTORNEY GENERAL
Environment and Natural Resources Division
United States Department of Justice

By: _____
CASSANDRA BARNUM
Trial Attorney
Environmental Crimes Section
Cassandra.Barnum@usdoj.gov
601 D. St. NW, Room 2118
Washington, D.C. 20004
(202) 305-0333

7

## DEFENDANT'S ACCEPTANCE

I have read every word of this Statement of Offense. Pursuant to Fed. R. Cr. P. 11, after consulting with my attorney, I agree and stipulate to this Statement of Offense, and declare under penalty of perjury that it is true and correct. My signature below constitutes acceptance of this Statement of Offense on behalf of myself in my personal capacity and on behalf of District Properties, LLC, as an authorized corporate representative.

Date: 6/20/19

Mohammad Sikder
Defendant

I have discussed this Statement of Offense with my clients. I concur with their decision to stipulate to this Statement of Offense.

Date: 6/20/19

Peter Anderson, Esq.
Attorney for the Defendants

8